IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-CR-70-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> REBECCA LYNN BARKER, ) <br> ) <br> Defendant. ) <br> _____ ) | MEMORANDUM AND <br> RECOMMENDATION |

This matter is before the Court on Defendant's Motion to Suppress (Doc. 415) which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.   Relevant Procedural Background

On August 3, 2021, a thirty-eight count Bill of Indictment was filed against twenty-three individuals. Doc. 3. In that document, Rebecca Lynn Barker ("Defendant") was charged with two counts relating to the possession or distribution of methamphetamine, and one count of possessing firearms in furtherance of a drug trafficking crime.

On March 4, 2022, Defendant filed the Motion to Suppress. Doc. 415.

Following an extension of time, the Government filed its response on March 31, 2022. Docs. 419, 443.

1

## II. Factual Background

### A. Evidentiary Hearing

"[A]n evidentiary hearing is not always required to resolve a motion to suppress." United States v. Griffin, 811 Fed. Appx. 815, 816 (4th Cir. 2020) (per curium) (citing Fed. R. Crim. P. 12(c)).

Here, Defendant seeks the suppression of evidence seized from her residence, arguing that the warrant authorizing the search was invalid. Neither Defendant nor the Government has requested an evidentiary hearing, and the undersigned concludes that a hearing is not necessary. See United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996) ("When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant"); United States v. Reed, No. 11-20288, 2011 WL 5408361, at *1 (E.D. Mich. Nov. 7, 2011) ("As the Court's consideration of Defendant's Motion requires only an examination of the information contained within the 'four corners' of the search warrant affidavit, oral argument on the Motion is unnecessary and no hearing shall be held").

2

## B. Information Upon Which the Warrant Was Based

The application, including the supporting affidavit, (collectively, the "Application," Doc. 443-1 at 2-8) for the subject warrant[1] included the following:

On March 26, 2020, Detective Micah Phillips of the Haywood County Sheriff's Office was in the area of Defendant's residence in Clyde, North Carolina (the "Residence"). Detective Phillips' affidavit indicates that he was there "in reference to drug activity which was occurring" at the Residence.

At 6:30 AM, Detective Phillips observed an SUV leave the Residence. He followed the vehicle and observed that it did not stop for a stop sign, traveled left of center by several feet, and traveled at speeds of 60 to 70 miles per hour. Detective Phillips requested the assistance of Deputy Yates (presumably also of the Haywood County Sheriff's Office) who was parked at a nearby truck stop. The SUV pulled into the truck stop and Deputy Yates approached the vehicle. He spoke with Defendant, who was the driver, about her driving and, "due to some recent previous drug charges and the fact that she was entered into NCIC,"[2] asked for consent to search the vehicle.

---

[1] The warrant and the Application are attached to the Government's response. See Doc. 443-1 at 1-8.

[2] The undersigned presumes NCIC stands for the "National Crime Information Center" database.

Defendant agreed and Detective Phillips located a "Xanax bar." In addition, Defendant advised that she had a firearm in her purse, and a .22 caliber pistol, for which Defendant did not have a concealed carry permit, was located. Defendant was given a citation and allowed to leave.

Several hours later, at approximately 2 PM that day, Detective Phillips returned to the area of the Residence and resumed surveillance. He observed a white Jeep Wrangler, which he believed to be operated by Jane Iverson Gill ("Gill"), leave the Residence.[3] Detective Phillips knew Gill from "several interactions in the drug trade in Haywood County" and stated in the Application that she was once involved in a separate drug trafficking case. Doc. 443-1 at 5.

Detective Phillips observed the white Jeep leave the Residence, turn left, and accelerate to a high speed. Detective Phillips followed from a distance, noting that his speeds were in excess of 60 miles per hour and that he was unable to catch the white Jeep. Detective Phillips stated in the Application that he knew that persons involved in the drug trade would use this tactic to discover if vehicles were following them. The white Jeep slowed down

---

[3] The previous Friday, Detective Phillips had observed Gill "at a location in Jackson County which has a large volume of drug activity as well." Doc. 443-1 at 4. At that time, Gill was operating a black four-door Jeep Wrangler with a Florida license plate. Detective Phillips was later advised by an "Enterprise Rental law enforcement officer" that Gill had traded the black Jeep and was currently in possession of a white Jeep Wrangler. Id.

appreciably and then accelerated "very hard again" to the point that Detective Phillips paced the Jeep at estimated speeds of 80 miles per hour in a 45 miles per hour speed zone. He continued to follow the white Jeep at speeds of nearly 60 to 70 miles per hour. He subsequently activated his emergency lights in an attempt to stop the Jeep for reckless driving.

The Jeep did not stop, however, and instead continued to travel and even accelerated to 80 miles per hour. The Jeep ultimately came to a stop at the end of a road, almost hitting a vehicle "of the resident who lives there." Doc. 443-1 at 5. Gill exited the Jeep and began running. She threw a cup from her left hand and appeared to be holding something else in her right hand. Detective Phillips pursued Gill and gave her commands to stop, though she did not comply. He tripped Gill and she fell to the ground. He also observed Gill attempt to throw an item which fell next to the porch of a nearby residence. Gill continued to resist being taken into custody such that, at one point, Detective Phillips drew his firearm and pointed it at Gill. She continued to resist and, when Detective Phillips found that her other hand was empty, he re-holstered his weapon. He ultimately pulled Gill toward his vehicle where he obtained a set of handcuffs and handcuffed her.

Phillip Capps was a passenger in the Jeep and was removed and also placed in handcuffs. After other law enforcement personnel arrived, Detective Phillips recovered the item that he had seen Gill throw. It was a Ziploc bag

5

containing an opaque crystal substance which he later found to weigh 62.4 grams. In addition, during a subsequent search of the Jeep, he located $2,151.00 in United States currency.

Shortly thereafter, Detective Phillips sent members of the criminal suppression unit of the Haywood County Sheriff's Office to the Residence. Those persons were unable to make contact with anyone inside the Residence and Detective Phillips ordered them to secure the house while he obtained a search warrant.

Later, Detective Phillips applied to a local magistrate for the warrant. The Application stated that there was probable cause to believe that evidence of the crimes of "Level I Trafficking methamphetamine," possession of a schedule IV controlled substance, and possession of drug paraphernalia would be found at the Residence. Doc. 443-1 at 2. In particular, the Application sought permission to seize nine (9) categories of items, including books and records relating to the sale of controlled substances, controlled substances and United States currency, and firearms and/or ammunition. Id. at 7-8.

At 7:39 PM, the magistrate issued the warrant. Doc. 443-1 at 1. It was executed approximately one hour later.

According to an inventory, items seized included 193.5 grams of an "opaque crystal substance," 4.9 grams of a "tan gravel substance," 12.9 grams of marijuana, 6.4 grams of marijuana, $6,141.00 of United States currency,

$1,085.00 of United States currency, four glass smoking pipes, multiple plastic baggies, and a .410 shotgun. Doc. 443-1 at 12.[4]

### III. Discussion

Defendant argues that the "affidavit does not state a single fact that would lead anyone to reasonably believe that drugs were *inside* the residence" and that there "is absolutely no nexus, or connection, between the observed and articulated facts presented to the magistrate and the residence, or place searched." Doc. 415 at 3-4 (emphasis in the original).

In response, the Government asserts that probable cause existed to support the issuance of the warrant and, in the alternative, that the evidence seized is admissible under the good faith exception to the exclusionary rule.

#### A. Probable Cause

> Whether probable cause for a search exists is a "practical, common-sense" question, asking whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause is "not a high bar," and officers "need not rule out a suspect's innocent explanation" in order to obtain a warrant. *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (quoting *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 586, 199 L.Ed.2d 453 (2018)) (internal quotation marks omitted).

---

[4] The inventory also indicates that 62.4 grams of an "Opaque Crystal Substance" were seized pursuant to the search warrant. Doc. 443-1 at 12. It is unclear, however, whether this is the same substance that was seized from Gill.

7

United States v. Blakeney, 949 F.3d 851, 859 (4th Cir. 2020).

A decision by a magistrate to issue a search warrant is given "great deference"; reviewing courts ask "whether the magistrate had a substantial basis for finding probable cause." United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993) (citing Gates, 462 U.S. at 236).

The Fourth Circuit has explained that where, as here, a court must determine whether a search warrant is supported by probable cause, "the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." Lalor, 996 F.2d at 1582 (citing Zurcher v. Stanford Daily, 436 U.S. 547, 556 & n. 6 (1978)). In that regard, "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." Id. (citing United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988)). That is, "probable cause may be inferred from the circumstances, and a warrant is not invalid for failure to produce direct evidence that the items to be seized will be found at a particular location." Id.

"In this and other circuits, residential searches have been upheld only where some information links the criminal activity to the defendant's residence. Where no evidence connects the drug activity to the residence, the

8

courts have found the warrant defective." Lalor, 996 F.2d at 1583 (internal citations omitted).

Here, the Application stated that a Xanax bar and a weapon were found with Defendant shortly after Defendant left the Residence at 6:30 AM and before she made any other stops.

However, as the Lalor court explained, the inquiry centers on whether it was reasonable to believe that the items sought by the warrant would be found in the Residence, not whether Defendant herself was suspected of a crime. In that regard, the Application did not contain specific facts indicating that evidence of Defendant's alleged drug activities would be found at the Residence. See United States v. Woodley, 447 F.Supp.3d 487, 491-493 (E.D. Va. 2020) ("possession of drugs [did] not establish probable cause to believe" there would be drugs at a defendant's residence even though the quantity of marijuana found in defendant's vehicle was "likely for distribution," where there were no facts in the application to establish that "the Defendant possessed any more drugs than he had in his vehicle" or that additional drugs would be found at his residence); see also United States v. Wienke, 733 Fed. Appx. 65, 70 (4th Cir. May 2, 2018) (unpubl.) ("in the investigation of a drug distribution offense, it is often unreasonable to suspect that drugs will be at the defendant's residence because 'when drugs are used in the commission of a distribution offense, the distributed drugs are no longer in the possession of

9

the suspected distributor'") (quoting Peffer v. Stephens, 880 F.3d 256, 273 (6th Cir. 2018) (distinguishing guns and computers, which are generally kept in the home, from drugs and explaining that the "affidavit therefore must establish some other reason to believe that drugs or other evidence of crime would be found in the suspect's residence if searched")). The Application stated that Detective Phillips was watching the Residence "in reference to drug activity which was occurring" there but it did not explain the basis for this statement, including what type of drug activity was suspected, when the alleged activity had taken place, or what persons were suspected of being involved. Similarly, the Application indicated that when Deputy Yates approached Defendant's vehicle, he spoke with Defendant concerning her driving and asked for consent to search the vehicle "due to some recent previous drug charges and the fact that she was entered into NCIC." Further information about those charges, though, was not provided. Compare Woodley, 447 F.Supp.3d at 493 (distinguishing cases in which there was evidence that the defendant was a "'drug dealer' engaged in ongoing distribution" from case in which affidavit did not provide any information suggesting the defendant "was engaged in ongoing drug trafficking"); with United States v. Villapando, Crim. No. ELH-16-159, 2017 WL 1277491, at *12 (D. Md. April 5, 2017) ("many courts have said that it is reasonable to infer that evidence of involvement in the drug trade is likely to be found where the dealer resides").

Likewise, although the Application included the specific facts that a vehicle driven by Gill was seen leaving the Residence later on the same day that Defendant was seen at the Residence, and that Gill attempted to discard an "opaque crystal substance" while also attempting to elude arrest, the information concerning Gill did not include facts that would sufficiently indicate the items to be seized were located in the Residence. For example, the Application did not explain why Gill initially came to the Residence, reveal that Gill at any point entered the Residence or made any statements about what was inside, or describe whether Gill and Defendant were involved in the unlawful use or possession of methamphetamine.

Accordingly, the undersigned agrees with Defendant that the information contained in the Application did not provide probable cause to believe that the items to be seized would be found in the Residence. See Lalor, 996 F.2d at 1582.

### B. The Good Faith Exception

As noted, in the alternative, the Government argues that the evidence should not be suppressed due to the good faith exception. Though Defendant has not addressed this issue in her principal briefing or replied to the Government's response, the undersigned has considered this position as well.

Under the good faith exception to the exclusionary rule, even if a warrant is found to be defective because it lacks probable cause, evidence obtained from

11

the execution of that warrant may nevertheless be admitted. United States v. Leon, 468 U.S. 897, 922-23 (1984). "This 'good faith' exception will be applied except in four limited situations: (1) when the affiant based his application on knowing or reckless falsity; (2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a 'rubber stamp' for the police; (3) when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid." United States v. Wellman, 663 F.3d 224, 228-229 (4th Cir. 2011); see also United States v. Martin, 839 Fed. Appx. 789, 791 (4th Cir. Jan. 26, 2021) (unpubl.) (per curium) (quoting Wellman).

"Typically, an officer's reliance on a magistrate's decision to issue a warrant will be deemed objectively reasonable." United States v. Thomas, 908 F.3d 68, 72 (4th Cir. 2018). "But as *Leon* makes clear, when a supporting affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' then an officer cannot be found to have reasonably relied on the resulting warrant, and suppression remains the appropriate remedy." Id. The Fourth Circuit has explained that "[t]his is a less demanding showing than the 'substantial basis' threshold required to

prove the existence of probable cause in the first place." United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002).

In this case, the Application provided some information concerning potential drug-related evidence and the Residence. Specifically, the Application advised that Defendant had recently been charged with drug crimes, that Detective Phillips believed drug activity was being carried on at the Residence, and that Defendant was found to be in possession of a Xanax bar and a concealed weapon shortly after leaving the Residence at 6:30 AM. The Application also described law enforcement's encounter with Gill, who was apprehended after she left the Residence, and after she attempted to discard over 60 grams of an opaque crystal substance and elude Detective Phillips.

Based on this information, the undersigned is not persuaded that the supporting affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Thomas, 908 F.3d at 72; cf. Woodley, 447 F.Supp.3d at 495 (finding good faith exception did not apply where application stated defendant had drugs in his possession, but officers did not see defendant leave his residence such that it was "equally plausible to assume" that defendant obtained the drugs from "another drug dealer, a stash house, or from any number of sources other than his residence").

The undersigned therefore concludes that the good faith exception to the exclusionary rule should be applied.

13

## IV. Recommendation

For the foregoing reasons, the undersigned respectfully recommends that Defendant's Motion to Suppress (Doc. 415) be **DENIED**.

Signed: April 21, 2022

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(B), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Signed: April 21, 2022